IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

SAMUEL SANCHEZ )
)
vs. ) CA. No. 05-240L
) CR. NO. 00-141L
UNITED STATES OF AMERICA )

**GOVERNMENT'S OBJECTION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

The United States of America, by and through its undersigned counsel, hereby objects to the defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person in Federal Custody as stated in the attached Memorandum in Support.

The United States of America respectfully requests that the Court deny the defendant's Motion.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

ROBERT CLARK CORRENTE
United States Attorney

GERARD B. SULLIVAN
Assistant U.S. Attorney

**CERTIFICATION OF SERVICE**

I hereby certify that on this 13th day of September, 2005, I served by first class mail, postage prepaid, a copy of the within Government's Objection To Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, with accompanying Memorandum In Support, to the following:

Samuel Sanchez
Reg. No. 04949-070
P.O. Box 26030
Beaumont, Texas 77720-6030

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

| | | |
|---|---|---|
| SAMUEL SANCHEZ | ) | |
| | ) | |
| v. | ) | CA. No. 05-240L |
| | ) | CR. No. 00-141L |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY**

I. INTRODUCTION

On July 17, 2001, the Defendant, Samuel Sanchez ("Sanchez"), pled guilty to conspiracy to commit carjacking, carjacking resulting in death and aiding and abetting a carjacking that resulted in death. All four of his co-defendants, Gregory Floyd ("Floyd"), Harry Burdick ("Burdick"), Raymond Anderson ("Anderson") and Kenneth Day ("Day") were also ultimately convicted by plea or by jury verdict for their various roles in this offense.[1] Sanchez, Floyd, Burdick, and Day were all sentenced to life in prison without the possibility of parole. Anderson received a prison sentence of 30 years.[2]

On November 25, 2002, Sanchez filed a notice of appeal challenging four aspects of his sentence. He alleged error in the

---

[1] Day was convicted and sentenced in State Court.

[2] Anderson was also later convicted of committing an assault upon a federal officer for which he received a consecutive sentence of five years imprisonment.

court's exercise of discretionary departure authority and the violation of his Eighth Amendment rights. On January 7, 2004, the First Circuit Court of Appeals affirmed Sanchez's sentence concluding,

> "We need go no further. This was a horrific crime, demanding stern punishment. The District Court took its task seriously and approached the matter of sentencing with care. Because nothing in the record so much as hints that the Court committed reversible error in sentencing [Sanchez], we affirm the judgments below."

United States v. Samuel Sanchez, 354 F.3d 70, 83 (1st Circuit 2004). Sanchez also sought certiorari to the United States Supreme Court which was denied. Samuel Sanchez v. United States, 541 U.S. 1054 (May 17, 2004). He now timely petitions this Court for relief under 28 U.S.C. § 2255 alleging ineffective assistance of counsel, abuse of discretion by the Court and prosecutorial misconduct.

Throughout the case, from charge to Writ of Certiorari, Sanchez was ably represented by George West, Esq. For a time, while the death penalty recommendation was being decided, Sanchez was also represented by a second "death qualified" attorney, Mr. Harold Trainor, Esq. At sentencing, Sanchez was faced with overwhelming evidence of his guilt for a crime that carried a maximum punishment of death. Faced with an indefensible case, Mr. West and Mr. Trainor negotiated a plea agreement sparing

Sanchez the possibility of the death penalty. The agreement also secured for Sanchez the right to argue for a sentence less than life. Mr. West pursued Sanchez's appellate rights all the way to the United States Supreme Court. See Sanchez v. United States, 541 U.S. 1054 (2004).

Now with a newly found sense of dissatisfaction, Sanchez claims that his counsel was ineffective. Sanchez makes a number of wholly unsupported complaints against his attorney as well as a number of baseless complaints against the Court and the government.

The United States maintains that Sanchez was effectively represented pre-trial and at sentencing, and before the First Circuit, and on Writ of Certiorari, by Mr. West. Sanchez's unsupported complaints about the abilities of his attorney, as well as the conduct of the Court and the prosecution fail to establish prejudice and do not justify relief under § 2255. The United States, therefore, requests that Sanchez' petition be denied and dismissed.

II. FACTS

A. THE OFFENSE

Button Hole Park is now a golf course, but, in June of the year 2000 it was still under construction. At approximately 1:00p.m. on June 9, 2000, a construction supervisor found the bodies of Amy Shute and Jason Burgeson (sometimes referred to

collectively as "the victims") near the perimeter of this site. The site, at that time, was being graded by earth movers and consisted primarily of sand and gravel. A section of the perimeter of the site was edged with hay bales. The area, particularly at night, was somewhat remote, desolate, and inaccessible.

The bodies were found resting against hay bales. They body of Amy Shute was behind Jason Burgeson, her arms were around his body as if hugging him. A headband covered his eyes. The victims appeared to have been sitting or kneeling at the time they were shot, and then slumped over dying. In Amy Shute's left hand she had been clutching a diamond ring. Jason Burgeson had approximately $78 in cash concealed in his shoe. The bodies of the victims were covered in blood. Both had been shot in the head. Amy Shute was shot once. Jason Burgeson was shot twice. The entrance wounds were generally situated on the top or crown of the head. There were no exit wounds.

Amy Shute and Jason Burgeson were innocently socializing with friends in Downtown Providence on the night of their deaths. They visited various nightclubs, talked, laughed and danced. They affirmed old friendships and began new ones. Amy Shute and Jason Burgeson were at least friends, but maybe more. There was the suggestion of a romantic relationship between the two.

While Amy Shute and Jason Burgeson were enjoying a summer evening, Floyd, Burdick, Anderson, Day and Sanchez were prowling the streets of Providence in search of victims to rob. They made several unsuccessful attempts including another attempt to steal a car before spotting the victims and Jason Burgeson's sport utility vehicle, a Ford Explorer.

At the end of their evening, Amy Shute and Jason Burgeson were enjoying some quiet time alone. Whatever joy they were experiencing was shattered when Floyd racked a round of hollow point ammunition into the firing chamber of his high powered semi-automatic pistol. Then, he and Burdick ordered the two victims to get into their Explorer. In a moment, the victims found themselves kidnapped, at gun point, and riding in their commandeered truck.

The victims were driven to a desolate spot amid the sand and gravel formations of the Button Hole construction site. They were forced to sit helplessly and watch as their five captors searched through their car and rummaged through their belongings looking for valuables. Amy Shute was forced to remove her own jewelry and surrender it to this band of robbers. Before her death, Amy Shute endured the terror of listening to some of her assailants discuss the plausibility of raping her. Throughout their captivity, the victims continually inquired about their fate and pled for their lives while Floyd was being egged on by

Sanchez and Day to slaughter them. Ultimately, Amy Shute and Jason Burgeson met their end, embracing each other, as they were executed in a final senseless, brutal, barbarous, and merciless act.

B. SANCHEZ'S ROLE

Sanchez's role in the offense of conviction is well established. On the evening of June 8, 2000, Sanchez was persuaded by Anderson to join him with Day, Floyd and Burdick in their attempts to commit a robbery because the group desired to use Sanchez's car for the evening. Once all five men were together, they all became involved in searching for potential targets. Sanchez drove all four of his accomplices in his car as they started their hunt for victims. Once the car ran low on gas, the group abandoned it and continued their hunt on foot. Even though his car was no longer being used, Sanchez stayed with them. After several failed robbery attempts, the group retrieved the car and continued their search for victims.

Around 2:00 am on June 9, as Sanchez ferried the men in his car, the group spotted Jason Burgeson and Amy Shute on Weybosset Street. Sanchez drove his fellow robbers around the block and parked on Westminster Street. With full knowledge that Floyd was armed and that he, accompanied by Burdick, were leaving the car to attempt to steal the Explorer, Sanchez and the remaining

accomplices remained in the car and prepared to assist in the crime or aid their escape.

Floyd and Burdick forced Amy Shute and Jason Burgeson into the Explorer at gunpoint and took the car keys from Jason. Floyd drove the Explorer to where Sanchez's car was parked and sounded the horn upon arrival. At this signal, Sanchez followed the Explorer providing transport to Anderson and Day.

After following the Explorer for some distance, Sanchez flashed his headlights for Floyd to stop. The two cars pulled alongside each other and Sanchez instructed Floyd to follow him. Sanchez then led the way to a golf course under construction in Johnston, Rhode Island.

At the golf course, the group left Sanchez's car behind and they all drove in the Explorer, with Amy and Jason still inside, to a more remote part of the golf course. After the Explorer had been searched for valuables and Amy's jewelry had been taken from her, Floyd discussed the idea of killing Amy and Jason. Sanchez and Day strongly encouraged the killing and urged that Floyd shoot Jason and Amy. Day argued that they should be killed because they had seen his face and heard his name. Sanchez asked Floyd what was taking so long and offered to kill them himself. Floyd then shot Amy and Jason killing them both.

Given Sanchez's significantly culpable role in the heinous carjacking and double murder, he could have faced a death

sentence had it not been for the effective assistance of his attorney. Sanchez should have no complaint.

III. LAW

A. The Law Governing Motions Under 28 U.S.C. § 2255

Section 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. The grounds justifying relief under § 2255 are limited. Section 2255 does not grant to a defendant the right to retry cases in which he had been adjudged guilty. Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

In United States v. Addonizio, 422 U.S. 178, 184-85 (1979), the Supreme Court stated:

> It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment . . . [u]nless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. . . . The court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage

> of justice' . . . . Similar limitations apply with respect to claimed errors of fact.

See also, Davis v. United States, 417 U.S. 333, 346 (1974).

A collateral attack may not do service for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982); Dirring v. United States, 370 F.2d 862, 865 (1st Cir. 1967). To obtain collateral relief, a prisoner must clear a significantly higher hurdle than would exist on direct appeal. The standard of review of a § 2255 motion for alleged trial errors to which no contemporaneous objection was made is not the plain error standard, but the cause and actual prejudice standard. Frady, 456 U.S. at 166-67. A defendant cannot raise issues in a federal habeas proceeding which he failed to raise at trial or on direct appeal absent a showing of cause for the failure and a showing of prejudice. Knight v. United States, 37 F.3d 769, 744 (1st Cir. 1994).

B. The Law Governing The Entitlement To A Hearing

Section 2255 provides that the court should hold a hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Rule 4 of the rules governing Section 2255 proceedings for the United States District Courts provides in pertinent part that

[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge

shall make an order for its summary dismissal and cause the movant to be notified. The burden is on the movant to provide by a preponderance of the evidence that he is entitled to a hearing. Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1998). In considering a motion under § 2255, the district court should accept the movant's allegations as true "except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." United States v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988).

The First Circuit has stated that no hearing is required where the § 2255 motion: (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974); United States v. Carbone, 880 F.2d 1500, 1502 (1st Cir.), cert. denied, 493 U.S. 1078 (1990). Moreover, the First Circuit has also held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. United States, 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. United States, 879 F.2d 975 n.8 (1st Cir. 1989). A district judge's personal observation and recollection of the events at trial may supplement the record. Gregory v. United States, 585 F.2d 548, 550 n.1 (1st Cir. 1978); United States v. DiCarlo, 575 F.2d 952, 954-55 (1st Cir. 1978).

C. <u>The Law Applicable To Claims Previously Raised on Direct Review</u>

In the federal system, the court is not required to reconsider the legal conclusions of a federal court. Accordingly, when a federal prisoner raises a claim that has been previously litigated and decided on direct review, he cannot raise that claim in a § 2255 proceeding, absent extraordinary circumstances. <u>See</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 720-21 (1993)(Scalia, J., concurring)(collecting cases); <u>Argencourt v. United States</u>, 78 F.3d 14, 16 n.1 (1st Cir. 1996). However, the relitigation doctrine does not act as an absolute bar to all claims that have been previously raised and can be overridden if exceptional circumstances exist. <u>See</u> <u>United States v. U.S. Smelting Refining & Mining Co.</u>, 339 U.S. 186, 199 (1950). Most petitioners allege their claim exhibits extraordinary circumstances, but are unable to prove relitigation is necessary. <u>See</u> <u>e.g.</u>, <u>United States v. McGee</u>, 201 F.3d 1022, 1023 (8th Cir. 2000)(per curiam); <u>Jones v. United States</u>, 178 F.3d 790, 796 (6th Cir. 1999). Relitigation is only likely if the claim has been effected by a change in the law. <u>See</u> <u>Davis v. United States</u>, 417 U.S. 333 (1974). Normally, once a claim has been rejected on direct review, it is not available to the Petitioner in a § 2255.

D. <u>The Law Applicable To Defaulted Claims</u>

Although once a claim is decided on direct review, it cannot ordinarily be relitigated under § 2255, a petitioner who does not raise a claim on direct appeal will also find the claim to be procedurally barred. If a claim is not raised on direct review, the Petitioner has committed a procedural default by failing to follow procedural rules and the claim is barred.

Procedurally defaulted claims cannot be heard on the merits on collateral review unless the petitioner's claim falls under one of two narrow exceptions. The first exception requires the applicant to demonstrate "cause" for each failure to raise the claim earlier, as well as "actual prejudice" resulting from the alleged error. <u>See</u> <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982). To meet the "cause and prejudice standard" the petitioner must show that "some objective factor external to the defense" impeded his efforts to raise the claim earlier, <u>Coleman v. Thompson</u>, 501 U.S. 722, 753 (1991), and that the alleged error worked to his disadvantage to the extent that the entire trial was in error. <u>Frady</u>, 456 U.S. at 170. If the Petitioner cannot show cause or prejudice, the defaulted claim can only be heard if innocence can be proved through new evidence. <u>Bousley v. United States</u>, 523 U.S. 614, 620-23 (1998). In this case, the petitioner cannot demonstrate actual innocence so he must show

cause and prejudice in order for his procedurally defaulted claims to be heard.

E. The Law Applicable To An Ineffective Assistance Claim

In considering the issue of effective representation, the District Court must first identify the acts or omissions of counsel. The Court should then determine whether these acts or omissions were outside the wide range of professionally competent assistance and, if so, whether the error affected the judgment. Strickland v. Washington, 466 U.S. 688 (1984). Counsel's representation must fall below an objective standard of reasonableness, and the defendant must show prejudice. Oullette, 862 F.2d at 376; See also United States v. McGill, 11 F.3d 233 (1st Cir. 1993). There must be a reasonable probability that, but for the attorney's unprofessional errors, the result would be different. Scarpa v. Dubois, 38 F.3d 1 (1st Cir. 1994). There is a strong presumption that Counsel's conduct was within the wide range of reasonable assistance. Singleton v. United States, 26 F.3d 233 (1st Cir. 1994); United States v. Moreno Morales, 815 F.2d 725, 751 (1st Cir.), cert. denied, 484 U.S. 966 (1987). The effective assistance of counsel standard does not require the "useless charade" of presenting a meritless defense. United States v. Cronic, 466 U.S. 648, 656 n.19 (1984). Counsel need not jump through every conceivable hoop, or engage in futile exercises. Singleton, 26 F.3d at 239. The defendant is entitled

to an effective defense, not a perfect one nor a successful one. Scarpa, 38 F.3d at 8. The attorney's judgment need not be right so long as it is reasonable. McGill, 11 F.3d at 227. A reviewing court should not use the benefit of hindsight to second-guess tactical decisions made by an attorney unless the decisions are unreasonable. Perron v. Perrin, 742 F.2d 669, 673 (1st Cir. 1984).

F. The Law Applicable to Sentencing Guideline Claims

Most claims that do not assert constitutional or jurisdictional errors are not cognizable on collateral review. Section 2255 applies to non-jurisdictional claims based on a federal statute or rule only if the claim alleges a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962). Courts have applied this standard to hold that non-constitutional violations of federal law are not cognizable on collateral review. See e.g., United States v. Timmreck, 441 U.S. 780, 783-84 (1979); Hill, 368 U.S. at 429. Most of the courts of appeals have held that "[b]arring extraordinary circumstances," claims of non-constitutional error in the application of the Sentencing Guidelines cannot be raised in a Section 2255 motion. Knight v. United States, 37 F.3d 769, 773 (1st Cir. 1994).

IV. ARGUMENT

Sanchez cites four (4) grounds under which he claims he is entitled to relief: ineffective assistance of counsel; abuse of court discretion; prosecutorial misconduct; and sentencing guideline error. Under each ground Sanchez cites several instances to support his general claim in separately numbered paragraphs. All are legally and factually unsupported. Each issue will be addressed in the order in which Sanchez presented them in his motion.

A. Ineffective Counsel

In Sanchez's complaint about the efficacy of his attorney, he appears to make four separate claims:

1. Sanchez claims that his counsel was ineffective because he did not interview the detective that took statements from his co-defendants and did not obtain statements from his co-defendants. Sanchez fails to identify what could have possibly been determined by such an interview. He therefore fails to establish any possible prejudice and cannot satisfy the second prong of Strickland.

In addition, each of the co-defendants' statements were recorded on videotape. All recorded statements were provided in the ordinary course of discovery along with transcripts of the video recordings. Therefore, Sanchez's accusation that his lawyer did not obtain copies of the transcripts is factually

inaccurate. Sanchez's complaint does not demonstrate prejudice and he is not entitled to relief.

2. Sanchez asserts that his counsel was ineffective because he failed to consult with him as much as he would have liked. Although Sanchez felt his counsel did not adequately convey the terms in the plea agreement and may have liked to have had more time to speak with counsel regarding witnesses to be called during sentencing, Sanchez is only entitled to an effective defense, which counsel provided. In addition, at his plea hearing, Sanchez not only stated under oath that he had discussed the terms of his plea agreement thoroughly with his attorney, but also stated he was satisfied with the advice, counsel, and representation he received. App. at 1, 2.[3] Therefore, Sanchez is not entitled to relief

3. Sanchez claims that his counsel's failure to object to the Government's motions for upward departure and an increase in Sanchez's base offense level rendered counsel ineffective. Sanchez's claim is inaccurate because Sanchez's counsel did object to the Government's motion for upward departure in his sentencing memorandum (App. at 3-6) and at the sentencing hearing. App. at 7-11.

---

[3] Pertinent portions of cited transcripts and other documents are appended to this memorandum and are separately paginated for ease of reference.

Even if his claim was accurate, Sanchez is not entitled to relief because he cannot satisfy the second prong of the Strickland test. He cannot show his sentence would have been different, particularly where the sentencing judge observed: "I would impose the death penalty on this defendant if I had that power, but I don't. The only power I have is to separate him from society for the rest and remainder of his natural life." App at 12.

4. Sanchez finally claims that his attorney was ineffective because he failed to attempt to withdraw Sanchez's plea of guilty despite a request to do so. Not only is this self serving assertion wholly unsupported by the record, but any effort to withdraw the plea would have been futile and Sanchez suffered no prejudice.

Rule 32 of the Federal Rules of Criminal Procedure governs the withdrawal of guilty pleas. When the Motion to Withdraw is made before sentencing, "the Court may permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R. Crim. Proc. 32(e). It is well established that a defendant does not have an absolute right to withdraw a guilty plea. United States v. Isom, 85 F.3d 831, 834 (1st Cir. 1996). Moreover, the defendant bears the burden of persuasion. Id.

To determine if an asserted reason for withdrawal meets the Rule 32(e) standard the Court must consider whether,

under the totality of the circumstances, the plea was knowing, voluntary and intelligent. United States v. Alvarez-Del Prado, 222 F.3d 12, 15 (1st Cir. 2000). The inquiry is opened ended, but several factors guide the inquiry. Id.

In United States v. Isom, the First Circuit held that:

> "A Court must consider several factors in weighing whether a defendant meets this burden, the most significant of which is whether the plea was knowing, voluntary and intelligent within the meaning of [Federal Rule of Criminal Procedure] 11. The other factors include:
>
> 1) The force and plausibility of the proffered reason;
> 2) The timing of the request;
> 3) Whether the defendant has asserted his legal innocence; and
> 4) Whether the parties had reached a plea agreement."

Sanchez could not have met this standard. He does not even attempt to do so now. Any motion to withdraw would have been futile. Considering the strength of the evidence and the one hundred percent conviction rate of his co-conspirators, Sanchez's conviction was all but assured and he suffered no prejudice. Indeed, he received the benefit of the plea bargain - no death penalty recommendation.

2. <u>Abuse of Court Discretion</u>

1 & 2. In paragraphs one and two Sanchez claims that the court abused its discretion by enhancing his base offense level due to factors already accounted for in the charged offense. Sanchez does not state what factors he believes were double counted. This claim has already been litigated on direct review. <u>See</u> <u>United States v. Sanchez</u>, 354 F.3d 70, 78 (1st Cir. 2004). Since there are no exceptional circumstances present, Sanchez has no claim for relief on this ground.

3. Sanchez claims the district court determined it did not possess the authority to depart downward. This claim was raised on direct review and denied because there is no evidence the court misunderstood its authority to grant departures. <u>Id</u>. at 76. Since there is no exceptional circumstance nor any change in law regarding this point, Sanchez's claim must be denied.

4. Sanchez alleges that the court abused its discretion by upwardly departing three (3) points because Sanchez's criminal history underrepresented the seriousness of his past criminal acts. The claim has been waived since it was not raised on direct review and Sanchez cannot demonstrate a cause for not raising the issue on direct review. As a result, this claim should be denied.

5. Next, Sanchez states that the court failed to articulate its reasoning for imposing a life sentence on Sanchez.

This claim is not only defaulted for Sanchez's failure to raise the claim on direct review, but is also unfounded. Even Sanchez quotes the court's reasoning in his § 2255 motion. As previously noted, the court also informed Sanchez in open court that it would impose a death sentence if it was granted the power. App. at 12. Therefore, this claim should be dismissed.

6. Sanchez claims the court abused its discretion by granting the Government's motion for an upward departure because the Government was barred from doing so under the plea agreement. This claim is not only procedurally barred because it was not raised on direct review since he had no cause not to raise the issue then, but is also based on a false premise.

The Government reserved the right to argue for any applicable upward departures under the plea agreement, which provided: "There is no agreement as to which guideline offense level applies, including any adjustments or <u>departures</u> that may apply to the defendant's case...the government reserve[s] their right to argue or present evidence on sentencing guideline issues." App at 13-14. At the plea hearing, the Government repeated the language of the plea agreement and explained it this way,

> "Essentially your Honor, it's an open ended plea agreement, except for the death penalty and acceptance of responsibility promises. The Government can recommend any appropriate

> sentence under the guidelines including the statutory maximum." App at 15.

This claim has no merit and should be dismissed.

7. Sanchez states that the court abused its discretion by denying Sanchez's motion for downward departure as a minor participant. However, Sanchez raised this claim on direct review where the court reiterated that Sanchez was clearly not a minor participant. Sanchez v. United States, 354 F.3d at 74-75. Since this claim has been unsuccessfully raised on direct review, Sanchez's claim should be denied.

8. Sanchez's final complaint regarding the court concerns a perceived "negative attitude" and "frequently expressed derogatory remarks" made towards him during his sentencing. Sanchez fails to specify what comments he perceives to be inappropriate or how he was prejudiced since no jury was ever convened to hear his case. This claim has no merit and it has been waived for failure to raise the issue on direct review. Therefore, the claim should be dismissed.

C. Prosecutorial Misconduct

1. Sanchez claims that the Government violated the terms and the spirit of the plea agreement by arguing for an upward departure. This claim should be dismissed because it is procedurally defaulted because it was not raised on direct appeal. Indeed, Sanchez appealed the upward departure but not on

this basis. The complaint also lacks merit because the plea agreement specifically gives the Government the right to argue for upward departures, a right that was made clear to Sanchez at his plea hearing. App. at 13-14, 15. Therefore, this claim should be denied.

2. Sanchez asserts that he was induced to sign the plea agreement by the Government with the malicious intent to somehow entrap him. This claim is procedurally defaulted and is refuted by the record. Sanchez himself stated, under oath at his plea hearing, that signing the agreement was a knowing, intelligent and voluntary act with no other promises or assurances made to induce him to plead guilty. App at 16. Once again, this claim has also been procedurally defaulted because he did not raise the claim on direct review. This claim should be dismissed.

3. Finally, Sanchez aggregates his complaints and, in his last two arguments, blindly states that somehow, the cumulative effect of the court's and the Government's actions violated his constitutional rights under the Fifth and Sixth Amendments. This argument is perfunctorily raised and is therefore waived. Sanchez has failed to raise this argument in the past and has failed to show a cause for his failure or any actual prejudice this may have caused him. Since none of his prior arguments has identified, let alone established, prejudice

it is difficult to conceive how the cumulative effect could be any greater than the sum of its parts.

D. Sentencing Guideline Error

Sanchez makes several claims that his sentence is in error due to the recent rulings in Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005). However, both Blakely and Booker are not retroactive because the rules are not "watershed rules of criminal procedure implicating fundamental fairness and accuracy of the criminal proceeding[s]." Cirilo-Munoz v. United States, 404 F.3d 527, 532 (1st Cir. 2005). As a result, Sanchez's "petitions under 28 U.S.C. § 2255 are unable to advance Booker claims in the absence of a Supreme Court decision rendering Booker retroactive." United States v. Fraser, 404 F.3d 9, 11 (1st Cir. 2005).

V. CONCLUSION

Sanchez has failed to establish any grounds for relief. This matter may be decided without a hearing. The United States requests that Sanchez's § 2255 motion be denied and dismissed.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

GERARD B. SULLIVAN
Assistant U.S. Attorney

**CERTIFICATION OF SERVICE**

I hereby certify that on this 13th day of September, 2005, I served by first class mail, postage prepaid, a copy of the within Government's Objection To Defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody, with accompanying Memorandum In Support, to the following:

Samuel Sanchez
Reg. No. 04949-070
P.O. Box 26030
Beaumont, Texas 77720-6030

Brunette E. Glamache